TUSCARAWAS MFG. CO. v. COLE et al.

(Circuit Court, N. D. Ohio, E. D.   June 1, 1901.)

No. 5,898.

PATENTS—INFRINGEMENT—RIVETING MACHINE.

> The Jaberg patent, No. 553,284, for a riveting machine, which is a combination of well-known mechanical devices to constitute a riveting machine, having means of adjustment to suit objects of different thickness to be fastened together, whereby such objects may be firmly held in place during the process of riveting, was not anticipated, and is valid; also *held* infringed by a machine essentially that of the patent, except that it uses different means of applying the power by which its parts are operated.

In Equity.   Suit for infringement of patent.   On final hearing.

Thurston & Bates, for complainant.
F. W. Bond, for defendants.

WING, District Judge.   This suit is one for the infringement of letters patent No. 553,284, to Frank A. Jaberg, for certain improvements in riveting machines.   The defenses are—First, invalidity of the patent; second, no infringement.   Under the first defense, it is claimed (a) that the invention of Jaberg was anticipated; (b) that there is lack of patentable invention or novelty in the device.   The second defense depends upon (a) the limitation of the patent by its terms and the state of the prior art; and (b) absence of identity between the device claimed in the Jaberg patent and the device used by the defendants.

The specification of the Jaberg patent suggests a want which his invention is calculated to supply; that is, a riveting machine having means of adjustment to suit objects of different thicknesses to be fastened together, whereby such objects may be held firmly in place during the process of riveting.   (Lines 10 to 16 of complainant's patent.)   The device described in the patent is a hand tool, constructed so that it may be capable of performing the useful double function mentioned, by combining certain mechanical means well known in the art, so that the mechanism formed by the combination may be of simple construction, and adapted to be used under those circumstances, and operated by such means, as the conditions which gave rise to the want would necessitate.   The device is a hand machine, and is arranged so that the operator may use both hands to apply sufficient power to force the rivet through the objects to be fastened together, while the machine itself acts as a substitute for a third hand in holding the objects to be joined in any position with relation to each other in which it is desired they should be fastened.

In examining the patents put in evidence by the defendants, I find no device shown or described which is adapted to perform this double function.   In the Carl patent, No. 455,167, while there are fixed jaws in the stock or frame, and axially aligned plungers, and appliances for holding a rivet and forcing it through the material operated upon,

there is nothing adapted to accomplish the function of holding the pieces together while being riveted. The burr holder, J, attached to the guide rod, K, is prevented from being moved towards the opposing face on the lower jaw, O, by the spring, K', placed between the shoulder, k, and the crosshead, b2. The combination of elements shown in this patent omits the one shown in Jaberg's invention which accomplishes its most important function.

In the patent to Bray, No. 8,276, the rigid jaws are shown, and axially aligned plungers, but no die threaded in the guide opening, so that the material can be held in place. There is no clamping device to hold the material, although there is a plunger and anvil for upsetting the rivet.

In the patent to Carpenter, No. 519,788, there is no stock or frame having fixed spaced jaws, integral or otherwise formed. The lower jaw, 5, is integral with the main casting which forms the base. The upper jaw, 13, is pivoted at 12, and, by link, 14, is pivotally connected with the lever, which operates it in an arc. There is no axial alignment whatever. There is a die, 19, with its threaded stem, 18, screwed into the upper jaw, and provided with a milled head so that it may be readily adjusted; but, because the jaw in which it is placed is not rigidly associated with its companion jaw, the adjustment of this die by means of the thread can never operate to clamp the material between the die face and the needle, 25, or the plug, 27. In the drawings of the Carpenter patent, 2, is a vertical section of the machine when the jaws are brought in contact with each other by operation of the lever, 9, and shows the only position of the operative parts of the device in which the material could be held between the die and the face of the lower jaw. But that is the position of the machine after it has entirely performed the function for which it was designed, namely, to upset the fastener of a button to be attached.

The patent to Hall, No. 491,016, shows nothing of any possible clamping appliance in its construction. The same may be said of the patent to Davis & Butler, No. 503,109. The device shown in the last-mentioned patent is merely a portable hand punch.

It is not necessary to consider the patents of Woodward, No. 477,347, for button-setting machines, nor that of Eckert, reissue No. 5,450, for improvement in hand punches, nor the English patent to Lake. Neither of the devices shown and described in these patents is at all similar to the invention of Jaberg in any such sense as would permit them to be regarded as anticipations.

The device described in the patent to Rosenwald, No. 507,042, is of greater similarity to the invention of Jaberg than is shown in any of the other patents pleaded or put in evidence. It is not a riveting machine, but, in being adapted to punch holes, performs a function which is one of the functions performed by the complainant's device when the rivet is forced through the material to be fastened. As shown by the drawings, the screw, R, is adapted to be adjusted, so that, by its adjustment, the space between it and the normal face of the grip, F, may be regulated. It is stated in the patent (lines 40 to 45), "The leg has a hollow screw for adjustment to suit the thickness of the material to be operated upon." The substance to be

operated upon is placed in the space between the screw, R, and the face, S, and then the punch, G, and grip, F, are forced forward, "until both punch and grip touch the substance on the head, S, and force it into contact with the screw, R." (Lines 79 to 83, Rosenwald patent.) The combination of parts in this device is not adapted to clamp an article between the two jaws in a desired position before the other function of introducing the rivet is performed, and that is the essential feature of the Jaberg device.

I find the complainant's patent is not anticipated by any of the devices shown in the patents pleaded. There are undoubtedly features in some of the devices similar to individual features found in the complainant's invention, but the combination adapted to perform the function for which the complainant's combination is designed is not found.

In deciding the issue of infringement, it must be remembered that the complainant's invention consists in a combination of instruments, each well known before, but co-operating in the combination to form a useful hand tool, capable of accomplishing an old purpose in a new and more convenient way. With this tool, a man can do his work as if he had a third hand. The inventor accomplishes this result by constructing the tool so that the die may be adjusted towards and from the rigid face of the lower jaw to operate as a clamp. Jaberg came upon a new idea of means, and is not the less entitled to consideration and recognition as an inventor because his invention consists of a combination of parts, although well known in the arts in their several individual characters, but unknown in co-operative combination.

It is urged in defense that the complainant's patent should be limited to the specific operative means described in the patent, and that, because the defendants use a slightly different means of operating the parts in the tool, they should be held not to infringe. The means for operating the plunger is a nonessential element of the Jaberg invention, except as its presence in the claim suggests the utility of the tool invented, which can only be apparent to the senses when the parts are put into co-operative activity by the application of power. The idea of the necessity of connecting every machine with power by well-known means of transmission so necessarily accompanies the idea of the machine itself that it cannot be said to be any part of an invention. The means for operating the plunger used by the defendants is clearly the mechanical equivalent of the means shown and described in the Jaberg patent. It cannot be said that the substitution of the operative means used by the defendants for that described in Jaberg's patent introduces a different co-operative law from that by which the elements combined and claimed in Jaberg's device are governed. The defendants have done nothing in the construction of the tool used by them but to substitute, for one of the nonessential members of the group of subordinate means claimed by Jaberg, its mechanical equivalent.

I hold that both claims of the Jaberg patent are valid, and that they are infringed by the defendants by the manufacture and use of either of the machines marked "Complainant's Exhibit, Defendants'

Machine, No. 1," "Complainant's Exhibit, Defendants' Machine, No. 2," and "Complainant's Exhibit, Defendants' Machine, No. 3." Decree may be drawn accordingly.